Adam Sackowitz
KATZ MELINGER PLLC
280 Madison Avenue, Suite 600
New York, New York 10016
Telephone: (212) 460-0047
Facsimile: (212) 428-6811
Email: ajsackowitz@katzmelinger.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------X

ANDRE GREENE, SIRRICHMOND HOLDER,
LUIS IRIZARRY, ANTOINE JACKSON,
PATRICK LANORITH, and CHARLES POWE,
individually and on behalf of all others similarly situated,

Civil Action No:
16-cv-06543

Plaintiffs,

COMPLAINT

-against-

METRO INDUSTRIAL WRECKING & ENVIRONMENTAL
CONTRACTORS, INC., ROBERT BANKSTON, ANTHONY
LAROSA and QUIRINO ROTONDO,

Defendants.

---------------------------------------------------------------------------X

Plaintiffs, Andre Greene ("Greene"), SirRichmond Holder ("Holder"), Luis Irizarry

("Irizarry"), Antoine Jackson ("Jackson"), Patrick Lanorith ("Lanorith"), and Charles Powe

("Powe") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by

their attorneys, Katz Melinger PLLC, complaining of the defendants, Metro Industrial Wrecking

& Environmental Contractors, Inc. ("Metro Industrial"), Robert Bankston ("Bankston"), Anthony

LaRosa ("LaRosa") and Quirino Rotondo a/k/a "Rino" (collectively, "Defendants"), respectfully

allege as follows:

## I. Nature of Action, Jurisdiction, and Venue

1.     This is an action seeking equitable and legal relief for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and New York Labor Laws ("NYLL") §§ 190 *et seq.* and 650 *et seq.* and 12 NYCRR 142-2.14.

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

3.     This Court has supplemental jurisdiction over the claims arising under New York state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

4.     Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conducts business through its employees, including Plaintiffs, within this judicial district.

## II. Parties

5.     Plaintiffs Andre Greene, SirRichmond Holder, Luiz Irizarry, Antoine Jackson, Patrick Lanorith, and Charles Powe are individuals residing in the state of New York.

6.     While employed with Defendants, Plaintiffs were regularly engaged in interstate commerce and/or in the production of goods for commerce.

7.     Plaintiffs are covered employees within the meaning of the FLSA and the NYLL.

8.     Defendant Metro Industrial is a New York limited liability company with its principal place of business located at 273 Walt Whitman Road, Huntington Station, New York 11746.

9. Metro Industrial is engaged in the business of providing environmental and demolition services.

10. Metro Industrial is a covered employer within the meaning of the FLSA and NYLL and, at all relevant times, employed Plaintiffs.

11. Upon information and belief, Defendants' revenues are in excess of the minimum required to fall within the jurisdiction of the FLSA.

12. Defendants operate in interstate commerce as Defendants maintain offices and equipment out of state in Asheville, North Carolina; Statesboro, Georgia; and West Palm Beach, Florida and works on projects located throughout the United States, including Ohio and Virginia.

13. Defendants are subject to suit under the statutes alleged above.

### III. FLSA Collective Action Allegations

14. The First and Second Causes of Action in this Complaint, which arise under the FLSA, is brought by Plaintiffs on behalf of themselves and similarly situated persons who were employed since the date three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

15. The FLSA Collective Plaintiffs consist of no less than thirty (30) similarly situated current and former employees of Metro Industrial who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them minimum and overtime wages and other pay.

16. As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter*

*alia*, failing to pay employees the statutory minimum wages for all hours worked and failing to pay employees the applicable overtime rates for all hours worked in excess of forty (40) per week.

17.     Defendants have engaged in its unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

18.     Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant damages to Plaintiffs and the FLSA Collective Plaintiffs.

19.     The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  Those similarly situated employees are known to Defendants, are readily identifiable, and locatable through Defendants' records.  These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

### IV. Factual Allegations

20.     Plaintiff Greene worked for Defendants as a laborer from in or around July 2015 until on or about December 18, 2015.

21.     Plaintiff Holder worked for Defendants as a laborer from in or around June 2015 until in or around December 2015.

22.     Plaintiff Irizarry worked for Defendants as a laborer from in or around April 2015 until in or around November 2015.

23.     Plaintiff Jackson worked for Defendants as a laborer from on or around May 11, 2015 until on or about October 5, 2015.

24.     Plaintiff Lanorith worked for Defendants as a laborer and fire guard from in or around April 2015 until on or around December 16, 2015.

25.     Plaintiff Powe worked for Defendants as a laborer from in or around May 2015 until in or around November 2015.

26.     Plaintiffs did not receive payroll notices at the time of their respective hires containing their rates of pay and the designated payday, and anything otherwise required by NYLL § 195(1).

27.     Plaintiffs were non-exempt employees pursuant to the FLSA and the NYLL, and were entitled to overtime compensation.

28.     Plaintiffs worked on numerous job sites throughout Manhattan and the outer boroughs of New York City.

29.     As laborers, Plaintiffs' job responsibilities included using sledgehammers, chainsaws, and their hands to remove brick, sheetrock, roofing and other materials in order to demolish buildings and other structures.

30.     Plaintiffs were also responsible for building and disassembling scaffolding, transporting debris from the worksite into vans and trucks for disposal, and preparing heavy machinery for use in the demolition process.

31.     Lanorith was hired as a laborer but, in or around June 2015, began working as a as a fire guard.

32.     As a fire guard, Lanorith was responsible for receiving, storing and maintaining the oxy-acetylene gas tanks, which were connected by a hose to a torch used to cut through metal pipes, and observed the employee who was operating the torch to ensure that the torch was being operated safely.

33.     Greene, Holder, Irizarry, Jackson, and Powe were employed as laborers throughout their employment with Defendants.

34.     Throughout their employment, Plaintiffs regularly worked five (5) days per week from approximately 7:00 a.m. until 5:30 p.m., with a fifteen (15) minute rest break and thirty (30) minute meal break each day.

35.     Plaintiffs were required to begin performing their daily duties promptly at 7:00 a.m. each workday, and therefore typically arrived at the worksite at approximately 6:45 a.m. to retrieve their tools and safety harnesses from the foreman and otherwise prepare for their shifts.

36.     If Plaintiffs were not prepared to begin work at precisely 7:00 a.m., they would be sent home for the day without pay.

37.     At the end of each workday, Plaintiffs spent approximately fifteen (15) minutes returning their tools and harnesses to the foreman.

38.     Although Plaintiffs were required to sign in and out and the beginning and end of each workday, Defendants instructed Plaintiffs to record the start of their shift at 7:00 a.m. and the end of their shift at 5:30 p.m., which did not account for the time Plaintiffs spent retrieving and returning their tools and safety harnesses at the start and end of each shift.

39.     Throughout their employment, Plaintiffs worked an average of fifty-one and one-quarter (51.25) hours per week.

40.     However, in or around November 2015, Defendants required certain employees to work additional hours in order to meet Defendants' deadline for completion of a project.

41.     Between November 2015 and December 2015, Holder worked from approximately 6:00 a.m. until 9:00 p.m., Monday through Friday, and from approximately 9:00 a.m. until 5:00 p.m. either Saturday or Sunday each week, for a total of approximately seventy eight and one-half (78.5) hours per week, including meal and rest breaks.

42.     Between on or about December 1, 2015 until on or about December 18, 2015, Greene worked from approximately 7:00 a.m. until 9:00 p.m., Monday through Friday, and Saturdays from 8:00 a.m. to 4:30 p.m., with a thirty (30 minute lunch break each day, for a total of approximately 75.5 hours worked per week, including meal and rest breaks.

43.     Plaintiffs were paid entirely in cash and were not given, with each wage payment, a statement listing their regular and overtime rates of pay, the number of regular and overtime hours worked, gross wages, deductions, and anything otherwise required by NYLL § 195(3).

44.     Although Plaintiffs regularly worked over forty (40) hours in a week, they were not paid one and one-half times their regular rate for every hour worked in excess of forty (40) per week.

45.     Plaintiffs are aware of other current and former Metro Industrial employees that were not paid overtime compensation despite working over forty (40) hours per week.

46.     Defendants never paid Plaintiffs more than their regular rate of pay of sixteen dollars ($16.00) per hour for all hours worked, including hours worked in excess of forty (40) per week.

47.     However, throughout Plaintiffs' employment, Defendants often failed to pay Plaintiffs even their regular rate of pay for all hours worked.

48.     Rather, Defendants routinely paid Plaintiffs between $60.00 and $140.00 per week less than what Plaintiffs should have received at their regular rates of pay for all hours worked.

49.     Although Defendants promised to pay Plaintiffs sixteen dollars ($16.00) per hour, in weeks when Plaintiffs worked fifty-one and one-quarter (51.25) hours and therefore were promised a weekly wage of $820.00, Defendants typically only paid Plaintiffs between $680.00 and $780.00.

50.     Of course, these wages did not take into account the additional eight dollars ($8.00) per hour Plaintiffs were entitled to receive for all hours worked over forty (40) each week.

51.     Additionally, on several occasions during Plaintiffs' employment, Plaintiffs worked a full week and were not paid any wages.

52.     Plaintiffs and other employees repeatedly complained to Defendants' foremen and site supervisors, including Mario Guzman ("Guzman"), Paul Lansky ("Lansky"), Anthony LaRosa and Rino Rotondo, as well as the owner, Robert Bankston, that Plaintiffs were not receiving all wages to which they were owed.

53.     Each time Plaintiffs complained about Defendants' unlawful activities, they were told that the issue would be resolved the following week and Plaintiffs would be paid all the wages they were owed.

54.     In or around September 2015, after Defendants failed to pay Plaintiffs any compensation for a period of several weeks, Plaintiffs and other employees organized a work stoppage to protest Defendants' unlawful practices and demand that Plaintiffs and the other employees be paid the wages Defendants owed them.

55.     At or near the time of the work stoppage, some affected employees contacted Noticias Telemundo, the news division of Spanish-language television network Telemundo, in hopes that Telemundo would publicly expose Metro Industrial's unlawful wage practices.

56.     Shortly thereafter, correspondents from Noticias Telemundo visited Defendants' work site and interviewed several employees about Defendants' illegal wage practices.

57.     Upon information and belief, after Noticias Telemundo visited the worksite and spoke with the employees, Defendants paid Plaintiffs and certain other employees some of the wages they were owed.

58.     Other employees did not receive any portion of the wages Defendants owed them.

59.     For example, Powe was only compensated for the first two (2) weeks of his employment, although he worked for Defendants for approximately six (6) months.

60.     Powe frequently asked Guzman and Lansky when he could expect to receive the compensation he was owed by Defendants, but was told each time that his payments were "coming."

61.     Additionally, both Greene and Holder continued working for Defendants until on or about December 18, 2015, but were not paid for any work he performed from on or about December 1, 2015 until the end of their respective employments.

62.     Moreover, Defendants still refused to pay Plaintiffs any portion of the overtime pay they were owed for all hours worked in excess of forty (40) per week.

63.     Jackson and other employees complained that they were still not being paid at the overtime rate for all hours worked in excess of forty (40) per week, but LaRosa merely replied that Plaintiffs and the other employees should be grateful that Defendants provided them with any of the back pay they were owed.

64.     When Jackson and the other employees continued to insist that they be paid their overtime wages, Defendants and its managers responded with words to the effect of, "Unless you are on the books, you don't get overtime," or "I can do what I want."

65.     On October 5, 2015, shortly after complaining to Defendants about his unpaid overtime, Jackson was terminated.

66.     When Jackson inquired as to the reason for his termination, Defendants claimed that the company was having "money issues."

67.     However, all of Defendants' work sites continued to operate and the company did not appear to be having any financial issues.

68.     Defendants' reason for terminating Jackson was pretextual, as Jackson was terminated in retaliation for making repeated complaints of Defendants' failure to pay him and his coworkers the overtime pay they were entitled to under the FLSA and NYLL.

69.     None of the plaintiffs continued to work with Defendants after December 2015.

70.     Lanorith was terminated on or around December 16, 2015 without explanation.

71.     Holder was terminated on or around December 18, 2015 without explanation.

72.     Powe resigned from Defendants in or around November 2015 because Defendants had not compensated Powe for any work performed since in or around May or June of 2015.

73.     Greene was terminated on or around December 18, 2015 when the project that he was working on was completed.

74.     Irizarry was laid off in or around November 2015 due to alleged budget cuts.

**AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS,
INDIVIDUALLY, AND ALL OTHER FLSA COLLECTIVE PLAINTIFFS**
(Minimum Wage Violations under the FLSA)

75.     Plaintiffs, on behalf of themselves and other FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

76.     Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and employed Plaintiffs and the FLSA Collective Plaintiffs.

77.     Pursuant to the applicable provisions of FLSA 29 U.S.C. § 206, Plaintiffs and the FLSA Collective Plaintiffs were entitled to be paid at least the applicable federal minimum wage rate for all hours worked.

78.   Throughout the relevant time period, Defendants willfully, regularly, and repeatedly failed to pay Plaintiffs and the FLSA Collective Plaintiffs any wages for the hours they worked.

79.   As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required minimum wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

80.   As Defendants did not have a good faith basis to believe that its failure to pay minimum wages due to Plaintiffs and the FLSA Collective Plaintiffs was in compliance with the law, Plaintiffs and the FLSA Collective Plaintiffs are entitled to additional damages equal to one hundred percent of the total amount of wages due ("liquidated damages").

81.   Judgment should be entered in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of their respective unpaid minimum wages, liquidated damages, attorneys' fees and costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND ALL OTHER FLSA COLLECTIVE PLAINTIFFS
### (Overtime Violations under the FLSA)

82.   Plaintiffs, on behalf of themselves and other FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

83.   Pursuant to the applicable provisions of FLSA 29 U.S.C. § 207, Plaintiffs and the FLSA Collective Plaintiffs were entitled to overtime compensation of one and one-half times their regular hourly rate for all hours worked in excess of forty (40) per week.

84.   Throughout the relevant time period, Plaintiffs and the FLSA Collective Plaintiffs often worked in excess of forty (40) hours per week during their employment with Defendants.

85.     Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs overtime wages of one and one-half times their regular rate for each hour worked in excess of forty (40) in a workweek.

86.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required overtime wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

87.     As Defendants did not have a good faith basis to believe that its failure to pay overtime wages was in compliance with the law, Plaintiffs and the FLSA Collective Plaintiffs are entitled to liquidated damages.

88.     Judgment should be entered in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants on the Second Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees and costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF JACKSON
(Retaliation in violation of FLSA 29 U.S.C. §§ 215(a)(3))

89.     Plaintiff Jackson repeats and realleges all prior allegations.

90.     Throughout the relevant time period, Jackson regularly and repeatedly complained to Defendants about its failure to pay Jackson all wages owed to him.

91.     Defendants refused to acknowledge Jackson's complaints, instead telling him in sum and substance that only employees who were "on the books" would be paid overtime.

92.     On October 5, 2015, Defendants terminated Jackson's employment in retaliation for making complaints to his supervisors about not being paid overtime compensation.

93.     Upon information and belief, Jackson was the only employee terminated on

October 5, 2015.

94.     Jackson's termination constitutes unlawful retaliation in violation of 29 U.S.C. §§ 215(a)(3).

95.     As a result of Defendants' violations of the law, Jackson has been damages and is entitled to recover from Defendants compensatory, emotional, physical, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees and costs.

96.     Judgment should be entered in favor of Jackson and against Defendants on the Third Cause of Action for all compensatory, emotional, physical, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action and any other damages permitted by law in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
(Overtime Violations under the NYLL)

97.     Plaintiffs repeat and reallege all prior allegations set forth above.

98.     Pursuant to the applicable provisions of NYLL § 650, et seq., and 12 NYCRR § 142-2.2, Plaintiffs were entitled to overtime compensation of one and one-half times their regular hourly rate for all hours worked in excess of forty hours per week.

99.     Plaintiffs regularly worked in excess of forty hours per week during their employment with Defendants.

100.    Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs overtime wages of one and one-half times their regular rate for each hour worked in excess of forty hours in a workweek.

101.    As a result of Defendants' violations of the law and failure to pay Plaintiffs the required overtime wages, Plaintiffs have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

102.    As Defendants did not have a good faith basis to believe that its failure to pay overtime wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

103.    Judgment should be entered in favor of Plaintiffs and against Defendants on the Fourth Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees and costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
(Failure to Timely Pay Wages under the NYLL)

104.    Plaintiffs repeat and reallege all prior allegations set forth above.

105.    Pursuant to the provisions of NYLL § 191(1)(a)(i), Plaintiffs were entitled to be paid their earned wages weekly and not later than seven (7) calendar days after the end of the week in which the wages were earned.

106.    During the relevant time period, Defendants routinely failed to pay Plaintiffs all of their earned wages in accordance with the agreed-upon terms of employment.

107.    During the relevant time period, Defendants failed to timely pay Plaintiffs all their earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

108.    Plaintiffs regularly worked in excess of forty (40) hours per work during their employment with Defendants.

109.    Throughout the relevant time period, Defendants failed to pay Plaintiffs all wages earned by Plaintiffs, including overtime wages earned for all hours worked in excess of forty (40) in a workweek, in violation of NYLL § 191(1)(a)(i).

110.    As a result of Defendants' violations of the law and failure to pay Plaintiffs in accordance with NYLL § 191(1)(a)(i), Plaintiffs have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

111.    Judgment should be entered in favor of Plaintiffs and against Defendants on the Fifth Cause of Action for all wages due, liquidated damages, all reasonable attorneys' fees, costs and interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
(Failure to Provide Payroll Notices Under the NYLL)

112.    Plaintiffs repeat and reallege all prior allegations.

113.    Throughout the relevant time period, Defendants failed to furnish to Plaintiffs a notice containing the rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; and anything otherwise required by NYLL § 195(1).

114.    Throughout the relevant time period, Defendants failed to furnish to Plaintiffs, with each wage payment, a statement listing: rate or rates of pay and basis thereof; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

115.    As Defendants failed to provide Plaintiffs with payroll notices as required by NYLL § 195(1), they are entitled to liquidated damages in the amount of $50.00 per day in which the

violation occurred, up to a maximum of $5,000.00, along with all reasonable attorney's fees and costs.

116.     As Defendants failed to provide Plaintiffs with payroll notices as required by NYLL § 195(3), they are entitled to liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorney's fees and costs.

### AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF JACKSON
(Retaliation under the NYLL's Wage Theft Prevention Act)

117.     Plaintiff Jackson repeats and realleges all prior allegations.

118.     Throughout the relevant time period, Jackson regularly and repeatedly complained to Defendants about its failure to pay Jackson all wages owed to him.

119.     Defendants refused to acknowledge Jackson's complaints, instead telling him in sum and substance that only employees who were "on the books" would be paid overtime.

120.     On October 5, 2015, Defendants terminated Jackson's employment in retaliation for making complaints to his supervisors about not being paid overtime compensation.

121.     Upon information and belief, Jackson was the only employee terminated on October 5, 2015.

122.     Jackson's termination constitutes unlawful retaliation in violation of the NYLL Wage Theft Prevention Act.

123.     Judgment should be entered in favor of Jackson and against Defendants on the Seventh Cause of Action for all compensatory, emotional, physical, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorney's fees, the costs and

disbursements of this action and any other damages permitted by law in an amount to be determined at trial.

WHEREFORE Plaintiffs, on behalf of themselves, the FLSA Minimum Wage Collective Plaintiffs and the FLSA Overtime Collective Plaintiffs, pray for relief as follows:

a) on the First Cause of Action for all minimum wages due to Plaintiffs and the FLSA Minimum Wage Collective Plaintiffs, an additional award of one hundred percent of all wages due, and all reasonable attorneys' fees in an amount to be determined by this Court;

b) on the Second Cause of Action for all overtime wages due to Plaintiffs and the FLSA Overtime Collective Plaintiffs, an additional award of one hundred percent of all wages due, and all reasonable attorneys' fees in an amount to be determined by this Court;

c) on the Third Cause of Action on behalf of Plaintiff Jackson for all compensatory, emotional, physical, liquidated, and punitive damages, if applicable, along with lost pay, front pay, all reasonable attorneys' fees and any other damages permitted by law in an amount to be determined at trial;

d) on the Fourth Cause of Action for all overtime wages due, an additional award of one hundred percent of all wages due to Plaintiffs, and all reasonable attorneys' fees in an amount to be determined by this Court;

e) on the Fifth Cause of Action against Defendants for all wages due, an additional award of one hundred percent of all wages due to Plaintiffs, and all reasonable attorneys' fees in an amount to be determined by this Court;

f) on the Sixth Cause of Action for liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all

17

reasonable attorney fees and costs and liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorney's fees and costs;

g) on the Seventh Cause of Action on behalf of Plaintiff Jackson for all compensatory, emotional, physical, liquidated, and punitive damages, if applicable, along with lost pay, front pay, all reasonable attorneys' fees and any other damages permitted by law in an amount to be determined at trial;

h) Interest;

i) Costs and disbursements; and

j) Such other and further relief as is just and proper.

Dated:  New York, New York
        November 23, 2016

                                        */s/ Adam Sackowitz*
                                        Adam Sackowitz

18